Let me start today by thanking Judge Kaplan from the United States District Court for the Southern District of New York for joining us and helping us. It's a great addition, so welcome and thank you. Let me also, before we get to today's argument, say a few words about a member of our court family, Tony Anthony, whose funeral is this morning and unfortunately we're here and missing the funeral, but he was a, and I think I speak for both Judge LaValle and myself and everyone, who's a member of the Second Circuit, he was a terrific member of our family and he'll be sorely missed. I understand that everyone is present for the calendar and so we'll start with United States v. Stone, 18-1238. MAURA BUCKLEY. Good morning, Your Honors. My name is Maura Buckley. I'm an Assistant Federal Defender from Connecticut. I represent Mr. Stone. I represented him below in the District Court. May I reserve two minutes for rebuttal, please? JUDGE LEBEN. Yes, of course. MAURA BUCKLEY. The District Court committed procedural error by erroneously construing Mr. Stone's statement to the court and to the victim's family in this case as a self-absorbed complaint, essentially lacking remorse. The court addressed the statement during its explanation. JUDGE LEBEN. You did give him a three-point reduction for acceptance of responsibility. Is that correct? MAURA BUCKLEY. She did, Your Honor. She did. JUDGE LEBEN. And she didn't say anything about remorse in her statement, did she? MAURA BUCKLEY. She didn't specifically say remorse, Your Honor, but she focused on the self-absorption, which I think can be easily translated into a lack of remorse. It appeared that her assessment was that Mr. Stone was concerned as to how his crime impacted him. JUDGE LEBEN. There are a lot of self-absorbed, remorseful people in this world, aren't there? MAURA BUCKLEY. Well, perhaps remorseful as to how something impacted themselves, but what the district court interpreted was that that's where his remorse was and that it wasn't remorse for his crime and the impact on the victim and her family. JUDGE LEBEN. So there was some content in that statement that could be described as concerned with himself. I tend to agree with you that the point was expressions of remorse, and his frequent use of I and me was in saying, I am remorseful, I regret, I don't remember the exact words, but he also threw in that while he had generally stopped speaking to his family, he did continue speaking to his mother because of the awareness that by the time he gets out of jail, she'll probably be dead, and so that part of it could be characterized as concerned with his own predicament  MAURA BUCKLEY. Your Honor, I disagree respectfully. I think that those statements were actually clearly illustrating just how bad his offense was. It had, he had rendered himself someone who was no longer, you know, worthy to be part of his family. I think... JUDGE LEBEN. Part of it, when he said, I no longer speak to my family, but then when he gets to, I do speak to my mom, he says, I talk to my mom, but that's only because I know that before all this is over, she might not even be alive anymore. That part of the statement could be described as expressing concern for his own predicament. MAURA BUCKLEY. I think if it's isolated, but in the context of the entire statement, again, I think he's making the point that, you know, he's essentially been, besides being incarcerated and separated from society, what he's done was just that bad. The only reason he's talking to his mother is because, you know, she may not be around later. I don't view that in the context of the entire statement as some sort of a self-pity, quite frankly. The statement is essentially the opposite of that, stating that he deserves whatever sentence that he's going to get. And I'm paraphrasing, interpreting it on my own, but I think it's a reasonable interpretation. JUDGE LEBEN. Yeah, but isn't the problem this? I mean, granting, for the sake of argument, your point that there were expressions of remorse in what he said, not to the exclusion of other things, but along with other things. Isn't your problem that the district court never denied that? MAURA BUCKLEY. Never denied that he expressed remorse? JUDGE LEBEN. Never denied that there was some element of remorse in what he had to say. She spoke about the self-absorption, but I don't view the two as mutually inconsistent. MAURA BUCKLEY. Well, Your Honor, respectfully, I disagree. I think her statements are mutually—I think it is inconsistent with his entire statement. She focused on that statement when she was rendering sentence. That was the first thing she talked about when she described the nature—the history and characteristics of the defendant in rendering sentence. And she stated that it was interesting because it was all about I and me and my and his concern for himself. And I respectfully disagree. That's to the exclusion of remorse for the victim, remorse for the victim's family and what's happened to them as a result of his conduct. Your Honor, I see I'm about to run out of time. JUDGE LEBEN. Is there anything you want to say on the substantive point? MAURA BUCKLEY. Your Honor, I will rest on the initial issue that we've discussed, and I will address the rest of that in rebuttal. Thank you very much. JUDGE LEBEN. Thank you very much. NANCY GIFFORD. May it please the Court, my name is Nancy Gifford. I'm the Assistant United States Attorney from Connecticut, and I was the attorney on the proceeding below. I'm just following up on some of the conversation this Court's already had. The government agrees that there has been no finding of remorse, and there was full credit for acceptance of responsibility, and the Court's interpretation of the defendant's statement was a permissible one. That is, in the context of the whole sentencing hearing, which at that point had begun with the government reading in a statement from the victim's aunt, the government referencing the minor victim's mother's letter, and then the government itself all detailing the heartbreaking consequences of the harm wrought by the defendant in his conduct. In that context, then, for the defendant to discuss how sorry he is and give full credit for his sorriness, I do believe you can both be remorseful and not fully grapple with or demonstrate that you have an understanding of the harm caused. You can be remorseful and also more concerned about yourself than the victim. Yes, Your Honor. Thank you. You can, but if the fact is . . . The judge's words were, if I have it correctly here, the most prevalent words in the defendant's statement were, I and me and my. How this has affected Mr. Stone is what is on his mind today. Rather than focus on the impact of his offense on the six-year-old girl and her family, we had to hear about Mr. Stone and how this case has impacted him. Now, there's like a paragraph here. I want to start by saying I'm very sorry for what I did. I know that I got to do a lot of time, and I know I deserve it. I am saying sorry right now for something I know I'm wrong for. I know how hard it must be for you guys, that's the victim's family, to be here today. I'm ashamed of myself. I'm embarrassed. I don't speak to my family no more. And then there's the one sentence I quoted earlier. I talk to my mom, but that's only because I know that before this is all over, she might not even be alive anymore. I just don't deserve it. I hope it brings you guys, the family of the victim, some peace. I'm really sorry. Now, I find it extremely puzzling how one can interpret that overall statement as an expression that doesn't express concern about the harm that he has inflicted on the victim and the family, and being solely absorbed in himself and feeling sorry for himself. Now, I also know very well that words are cheap and that expressions of remorse doesn't necessarily mean remorse, but nonetheless, to say that, to characterize that statement as one that expresses only concern for himself and doesn't express concern about the harm that he's inflicted on the victim and his family, just seems to me seriously wrong. And if the fact were that the court increased the sentence, gave him a stiffer sentence, because of her feeling that his statement was one expressing only concern for himself, that would be kind of problematic, because I just ... While there is a sentence out of the 11 or 12 sentences, there is one that is about his own predicament, that his mother is going to die before he gets out of prison. The rest of it, every single sentence, sincere or insincere, is about shame and admission of guilt and so forth. What do we do about that if we face the possibility that the judge may have increased the sentence because of an incorrect ... I just don't see how anybody can interpret all but one clause, one half sentence out of those dozen sentences, as being concerned with himself rather than with the victim and his family and the harm that he's done. Just a couple of quick points. One is the hypothetical that the court just posed is not what we had here. There was no upward departure and he did receive full credit, but ... We don't say it's not what we have. We don't know. My question is, how do we know whether the court gave him more because of the judge's expressed statement that when he spoke to the court, and she even expresses a little bit of resentment, we had to listen. We had to listen to his concern for his own sad plight. I think the court's view in that sentencing hearing, as I mentioned, in the context, its view was a permissible interpretation of what the defendant said. It reflected some remorse. It also reflected his own self-absorption at what the consequences were. It's not just ... The I's and the me's? Because of the statement that I'm going away for a long time. I won't be seeing my mom likely because of the length of the sentence. I don't talk to my family anymore. His statement, I'm embarrassed, reflects back to his sentencing memorandum where he talks about that the biggest punishment from this offense is going to be the fact that he's on the sex offender registry. Those don't reflect anything about the harm and the heartbreak and the trauma of this family and this child. Ms. Gifford, maybe you could help me on another question. There was, as I understand it, a finding that there was no contact with the minor, right? That's correct, Your Honor. What would the sentencing exposure have been in Connecticut if he had forcibly raped the child? Your Honor, I did a quick review of Second Circuit case law where there has been production of child pornography and sex abuse. For my quick review, the sentences range around 50 years. Under Connecticut law? Well, Second Circuit, so it would be New York. I didn't parse it out for just Connecticut. I can supplement if that's helpful. What would it have been in New York under the penal law? Oh, under state law. My apologies. It would be significantly less, but I don't know the number, Your Honor. Doesn't that count for something here? I don't believe so, Your Honor. There's been some recent case law in the Second Circuit regarding the fact that we look at the fact that they are producing child pornography as a separate and distinct offense and the harm it causes from that. In particular . . . He denies reprehensible taking, in secret, of 30-odd photographs on his cell phone, which he deleted on his own before there was any notion that he'd be caught, is worse than forcible rape of a six-year-old? I appreciate your . . . What I would say is when you look at the . . . It was noted recently, I believe, in Brown that the average sentence for someone who produces child pornography is 261 months. That includes those that have actually had hands-on contact and those that have not. I didn't want to interrupt you. I saw just a little hand motion. 292 months, I think, sounds like a lot of time for this conduct, but of course . . . I'm sorry. I've run out of time, but I'm happy to answer. I think that that's part of the concern. I certainly appreciate it is a long time. Even 15 years is a long time, but when you look at this defendant being a Category 6, that is a criminal history Category 6 that requires at least 13 criminal points, he's at 20 in his young life. He had a history of violence, violence against women, violence against a man who was prone on the street kicking him. He had almost no period of his adult life where he wasn't in violation of that criminal history, which is very rare in a production of child pornography cases. The Sentencing Guidelines most recent study says 77 percent of individuals who are charged with production of child pornography are criminal history 1. We are up to 6. He's a different category, though. He's a different category, Your Honor. I would like to ask you something else that I find puzzling. The Court said two different things that seem to be diametrically opposed to each other. On the issue of whether there was any touching, any physical contact, the Court said there's an image of the child's body in which Mr. Stone's underwear are depicted, so I'm not certain that there is no evidence that there was no contact. As I said earlier, I don't leave my logic behind when I come into the courtroom, and that appears to be saying that in view of the fact that he was lying on the bed next to her in his underwear, that she had her nightie pulled up to her waist revealing all of her private parts, and they were shown in the photograph, and the mother said, the mother provided information that the child never slept without panties on. She was shown without panties on in the photograph. The Court seems to be saying there that I think there was touching, and then she says later that there was no physical contact. Those seem to be saying two opposite things. What should we make of that? My understanding, Your Honor, is that what the judge was saying, very similar to what the Court has just said, this recitation that there had to have been some contact. The underwear would have had to have come off. You're lying in bed next to the child in your boxers. There's touching, and then there's sexual misconduct and sexually inappropriate touching. That's what the government said from the beginning. We did not have evidence of in this case, and that's what the Court, when it said at the end, just before ruling that . . . in imposing the sentence, fully credited the defendant with no physical contact. If there's any other further questions . . . Thank you very much. Thank you, Your Honor. We'll hear a rebuttal. If I may just address Judge LaValle, the statement about the judge's two diametrically opposed statements. When the district court made the statement that it didn't leave its logic at the door, that was in response to defense count my statement that there had been no allegation or evidence of sexual assault, which was actually in response to the victim's aunt's letter characterizing the child as a victim of sexual assault. The intention was to remove that issue from the sentencing because it wasn't a part of it, and I didn't want a reference in a victim-associated letter to set us on a different path. It seems as though the Court, though, analogized contact with sexual assault and then gave him apparent credit at a later point under the guidelines for not sexually assaulting the victim. But just going back to the idea that whether or not the judge's misconstruction impacted her sentence, it clearly impacted the sentence because, as I stated earlier, at the beginning of the Court's recitation of the basis for the sentence, the Court discusses under the history and characteristics of the defendant, the first thing she talks about is this perceived self-absorption. She gave him a sentence at the bottom of the guidelines. If you review the Halliday case, that's another case where there was, it's a Seventh Circuit case, but it's referenced in our reply brief, and it's a case where the Court misconstrued the defendant's statements. And his statements reference that he was innocent, that he received ineffective assistance of counsel, that his confession had been coerced. But how do we review that? Is it that she clearly, that anybody reading the transcript would clearly conclude that she misconstrued the defendant's remorse? What is the standard? Well, the standard is obviously, it's an abuse of discretion, but I believe this is a plainly erroneous finding by the trial court. I think the transcript is plain on its face. That presupposes that she credited the sincerity, right? Maybe she disbelieved the claims of remorse. Your Honor, that's a good point, but I don't think that's the case here. In fact, I'm, she didn't state that that was the case, and I understand. She didn't say she disregarded remorse either. Her statements misconstruing Mr. Stone's statements are about the words he used, parsing out I, me, and my, and assigning an interpretation that is not there, that she didn't draw from his demeanor, something intangible that only the district court could— If she disregards the claims of remorse on the ground that she doesn't believe them, there's nothing else in the statement, is there, besides his comments about the impact on him? I think that's accurate, but, Your Honor, she doesn't say that she's disregarding or finding any claims of remorse. Your adversary said that, if I understood correctly, that this could have been construed as, in part, a reference, not just to the paragraph from his statement in court that I read, but to something that he had filed earlier in which he talked about, in which he talked about the hardship to him of being labeled as a sex offender. Thank you for mentioning that, Your Honor. I wanted to address that. In the sentencing memo, and frankly, it's something that I would raise with most defendants who are going to be on the sex offender registry. It's raised as, you know, another punishment. Mr. Stone's statement was Mr. Stone's statement. I wrote the sentencing memo, so his statement about being embarrassed in the courtroom, he didn't attach it or relate it back to the sentencing memorandum, so I don't think that's an appropriate finding. Your state was an attorney's statement? I wrote the sentencing memorandum, Your Honor, and I don't believe in his written statement he mentioned anything. In fact, he didn't about the sex offender. He filed a written statement? He filed a written statement that was actually different from what he stated in court, but similar in terms of his sentiments. It says, respectfully submitted the defendant by Maura Buckley. Okay, you wrote it. I wrote it. I usually don't let my clients write the sentencing memorandum. I understand that. So his statement in court, and I know this is nowhere on the record, it was just his rightly or wrongly, nothing to do with it, and quite frankly, I think it was one of the best statements I've ever heard a client give. Thank you. Thank you very much. We'll reserve the decision.